[Civ. No. 1028.   Third Appellate District.—February 10, 1913.]

In re Application of HARRY H. GREEN, that the "Daily Recorder" be declared a newspaper of general circulation. HARRY H. GREEN, Appellant.

NEWSPAPER—"DAILY RECORDER" OF SACRAMENTO—GENERAL CIRCULATION. The *Daily Recorder* is a newspaper which has been published daily, except Mondays and legal holidays, in the city of Sacramento, for a period exceeding one year prior to the filing of the petition herein; it publishes local and telegraphic news and intelligence of a general character, its telegraphic news being obtained from other Sacramento evening papers; the greater part of the local news published by it consists of the daily report of documents recorded in the offices of the county recorder, and the proceedings of the superior court, although it also publishes other matters of local interest. It has a

subscription list of paying subscribers, exceeding the number of two hundred, consisting of persons, firms, and corporations engaged in very many different kinds of occupation; the largest classes of such subscribers are lawyers and real estate firms. *Held,* that such newspaper was one of general circulation, within the meaning of section 4460 of the Political Code.

Id.—Publications of Local and Telegraphic News not Essential.— That section does not require, in order for a newspaper to be established as one of general circulation, that it shall publish both local and telegraphic news. The requirement is "local or telegraphic" news and intelligence of a general character.

Id.—Size of Paper—Diversity of Subscribers—Specialty of Particular Class of Business.—Whether a newspaper is one of general circulation is a matter of substance and not of size, and depends largely upon the diversity of its subscribers rather than upon mere numbers. The mere fact that it makes a specialty of some particular class of business and conveys intelligence of particular interest to those engaged in such business does not deprive it of that character.

APPEAL from an order of the Superior Court of Sacramento County denying a petition to have a newspaper established as one of general circulation. C. N. Post, Judge.

The facts are stated in the opinion of the court.

A. L. Hart, and R. L. Shinn, for Appellant.

PLUMMER, J., *pro tem.*—This is an appeal from an order of the superior court denying the petition of the appellant that the *Daily Recorder,* a paper published in the city of Sacramento, state of California, be ascertained and established as a newspaper of general circulation, as that term is defined in section 4460 of the Political Code.

The petition sets forth, in substance, that the *Daily Recorder* is a newspaper published for the dissemination of local and telegraphic news and intelligence of a general character; that said paper has been established, published, printed, and circulated at regular intervals, to wit: every day except Mondays and legal holidays in the city and county of Sacramento, state of California, for more than one year preceding the filing of the petition; that said newspaper is not devoted to the interests or published for the entertain-

ment or instruction of any particular class, profession, trade, calling, race, or denomination, or for any number of such classes, professions, trades or callings, etc.; and further that such newspaper has a *bona fide* subscription list of paying subscribers.

The testimony set forth in the bill of exceptions is without conflict and is to the effect that the *Daily Recorder* has been published daily, except Mondays as hereinbefore stated, in the city of Sacramento for a period exceeding one year preceding the filing of the petition; that said paper publishes local and telegraphic news and intelligence of a general character; that its telegraphic news is obtained from other Sacramento evening papers; that the greater part of the local news published by the *Daily Recorder* consists of the daily report of documents recorded in the offices of the recorder of Sacramento County, the proceedings of the superior court of said county, also other general news of a local nature; that the subscription list of paying subscribers to said paper somewhat exceeds the number of two hundred; that its subscribers consist of bankers, wholesale liquor houses, brokers, furniture dealers, saloons, fire insurance companies, retail grocers, wholesale glass and paint companies, carpenters, wholesale cement and lime companies, builders and contractors, millmen, automobile dealers, manufacturers, real estate dealers, private residents, barbers, attorneys at law, doctors, title companies, mercantile agencies, fruit exchanges, architects, collection companies, plumbers, dealers in hops, and bond and mortgage companies, the largest classes represented among the *bona fide* paying subscribers being lawyers and real estate firms; and that it is not the avowed purpose of said *Daily Recorder* to entertain or instruct any particular trade, calling, race or denomination, or any number of such classes.

A copy of the paper issued under date of March 17, 1912, is attached to the transcript and made a part thereof. In this copy there appears a list of the documents recorded on the preceding day in the office of the county recorder of Sacramento; a statement of the collections made by the city collector of Sacramento for the preceding week; an account of a doctor's banquet; a notice that a realty firm has taken new quarters; a list of the building permits issued on the previous day; a requisition issued by the governor; an account of the

erection of a second-class hotel; an item relating to the action of the grand jury of said county; a statement of bank clearances; a few personal notices; the trial calendar of the various departments of the superior court of Sacramento County for the following day; also the superior court proceedings for the preceding day; a short item as to the action of the chamber of commerce; an account of the annual meeting of the Sacramento Valley Development Association; an item in relation to an understanding reached by the Retail Merchants Association providing for the installation of electroliers; a report from the county clerk's office of the marriage licenses issued; two items as to new buildings; a resumé of seven decisions reported in the National Reporter system relating to real estate and matters affecting the title thereto, a report of the action of the Sacramento center of the California Civic League, of interest to women voters; an account of the activity of the members of Congress from California and what they are doing in Washington; a list of real estate dealers, attorneys at law, contractors and builders, plumbers and gas-fitters, garages and machine works, and the members of the Master Painters Association, together with several other items not necessary to further specify, as well as a small number of general advertisements.

Upon this testimony the trial court found that said *Daily Recorder* is not a newspaper published for the dissemination of local or telegraphic news or intelligence of a general character; and further, that said newspaper is devoted to the interests of and is published for the instruction of particular classes, to wit; members of the legal profession and real estate agents; that it is the avowed purpose of said newspaper to entertain and instruct said classes. These findings of the court are attacked as being contrary to the evidence.

Section 4460 of the Political Code defines a newspaper of general circulation to be a newspaper "published for the dissemination of local or telegraphic news and intelligence of a general character, having a *bona fide* subscription list of paying members,—and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, etc., . . . is made; a newspaper devoted to the interests, or published for the entertainment or instruction of a par-

ticular class, profession, trade, calling, race, or denomination, or for any number of such classes, professions, trades, callings, races or denominations when the avowed purpose is to entertain or instruct such classes is not a newspaper of general circulation." This section does not provide that in order for a newspaper to be established as a newspaper of general circulation that it shall publish both local and telegraphic news. The language of the code is "local or telegraphic news and intelligence of a general character."

Does the *Daily Recorder* properly come within the definition of the code and is it a newspaper of general circulation?

As to whether it is such a newspaper is manifestly a matter of substance and not merely of size; and that it is of general circulation must largely depend upon the diversity of its subscribers rather than upon mere numbers. There are doubtless many strictly literary, scientific, religious, medical, and legal journals which have a large number of subscribers but are not of general circulation, being published for the information, respectively, of such particular classes. And, as said in *Hanscom* v. *Meyer*, 60 Neb. 72, [83 Am. St. Rep. 509, 48 L. R. A. 411, 82 N. W. 115], "it would be manifestly unjust, as well as against the letter and spirit of the law, to recognize such publications as proper for the advertisement of legal notices—the object in all cases being to give wide and general publicity regarding the subject of which notice is required to be published." The same case holds that the fact that a newspaper makes a specialty of some particular class of business and conveys intelligence of particular interest to those engaged in such business will not thereby deprive it of its general classification as a newspaper within the meaning of the statute. The definition of a newspaper there given is as follows: "A printed publication issued in numbers at stated intervals conveying intelligence of passing events," etc.

The paper before the court in that case contained legal notices, information regarding courts, a legal directory of the Douglas County bar, some advertisements of a miscellaneous character, literature of a general kind commonly designated "plate matter," and what purported to be information of the action of Congress, two addresses by lawyers and a limited amount of general news of current events, although, as the

court says, there was quite a dearth of the latter. The court held that such a paper came within the terms of the statute.

In the case of *Linn* v. *Allen,* 145 Ind. 584, [57 Am. St. Rep. 223, 33 L. R. A. 779, 44 N. E. 646], the question arose as to the sufficiency of a publication in the *Daily Reporter,* a paper published in the city of Indianapolis in the state of Indiana. Its circulation, as stated by the court, was among judges, lawyers, bankers, collection and commercial agencies, real estate dealers, merchants, manufacturers, and other professional and business men to the extent of about five hundred and fifty copies in the city of Indianapolis, and outside of said city and throughout the state of about two thousand five hundred copies. Its news consisted primarily of legal matters, including proceedings of the supreme court and appellate courts of the state, the various federal, state, county and city courts sitting in Indianapolis, the trial calendars of the various courts, an account of new suits filed, proceedings of the board of public works and other matters relating to street improvements; a list of deeds filed in the recorder's office of the county, mortgages, liens, etc. Such a paper was held to be one publishing intelligence of a general character. In its opinion the supreme court of Indiana further says: ''By a newspaper of general circulation the legislature certainly did not intend a newspaper read by all the people of the county. As a matter of fact, every newspaper is, in greater or less degree, devoted to some special interest. No one, however, would claim that because a newspaper should, for example, be the organ of a certain political party and especially devoted to the interests of such party it would not therefore be a newspaper of general circulation. Yet such a newspaper is to a large extent read only by the members of the political party whose doctrines are advocated or expounded in its columns.''

A similar case was before the supreme court of Michigan in *Lynch* v. *Judge of Probate,* 101 Mich. 171, [45 Am. St. Rep. 404, 24 L. R. A. 793, 59 N. W. 409]. It was there held that the *Wayne County Legal News,* a newspaper published weekly in the city of Detroit, while devoted primarily to the interests of the legal profession and the dissemination of legal news, containing an acount of the proceedings of the supreme court of the state of Michigan, Wayne County cir-

cuit court, and other courts of the city of Detroit, notices of future proceedings in said courts, opinions of the courts of the United States and other states, also of other counties in Michigan where the same were of interest to the legal profession or to the general public; also personal items of general interest and notices of passing events, records of real estate transfers and mortgages, chattel mortgages, bills of sale, and general advertisements, circulating among judges, lawyers, bankers, brokers, real estate agents, merchants and business men, and containing items of interest to all of them, constituted a newspaper of general circulation within the meaning of the revised statutes of that state.

In the late case of *Hesler* v. *Coldron*, 29 Okl. 216, [116 Pac. 787], the supreme court of Oklahoma had before it for adjudication questions almost identical with those presented by the case at bar. Section 4006 of the statutes of Oklahoma reads: "No legal notice, advertisement or publication of any kind required or provided by any of the laws of the territory of Oklahoma to be published in a newspaper shall have any force or effect as such unless the same be published in a newspaper of the county having general circulation therein and which newspaper has been continuously and uninterruptedly published in said county during the period of fifty-two consecutive weeks prior to the first publication of the notice or advertisement."

The court in that case says that the testimony is undisputed and proves that the *Daily Legal News* has been published since 1903 and more than fifty-two weeks prior to the publication referred to; that at the time the publication in question was running and for one year prior thereto it had a circulation of from two hundred and five to two hundred and fifteen among bankers, merchants, lawyers, real estate agents, insurance agents, wholesale merchants, hardware merchants, physicians, and almost every class of business in the county; that it circulated in almost every town in the county; that it was so circulating for one year prior to the first of October, 1908; that in addition to items of legal news it carries a list of the real estate transfers of each day, the mortgages, both real and chattel, appointments of agents, powers of attorney filed in the register's office, marriage licenses, building permits, charters from the secretary's office at Guthrie, also news

items of general interest. It carries besides court proceedings short telegraphic dispatches of general interest; that of the four copies of the paper introduced in evidence one contained a telegraphic dispatch concerning the Cooper trial at Nashville; one concerning President Castro of Venezuela, and one concerning the illness of Governor Lillie; and then held that such evidence discloses that the publication in question was one of general circulation in the county and fell squarely within the terms of the statute, reversing the judgment of the lower court and remanding the case for a new trial.

We think that the news items referred to in this opinion as having been published in the *Daily Recorder* are matters of local interest to the people of Sacramento and also constitute intelligence of a general character within the meaning of the language used in the section of the code defining newspapers. Practically all classes of people are more or less interested in court proceedings and in the instruments which are filed from day to day in the county recorder's office, building permits and proceedings of bodies constituting a city's government. The paper in question contains such news items without any unnecessary verbiage, and is of that character of paper to which one would naturally look for information concerning affairs of local intelligence of a general character affecting the business and welfare of Sacramento County.

Being of the opinion that *The Daily Recorder* is a paper of general circulation as defined by section 4460 of the Political Code and that the findings of the trial court are contrary to the evidence as contended for by appellant, the judgment of the lower court is hereby reversed and the cause remanded for a new trial.

Chipman, P. J., and Burnett, J., concurred.