[Civ. No. 6693. First Appellate District, Division One.—April 1, 1929.]

In the Matter of the Application of C. M. DAVID et al. to have the "Journal of Commerce" Established as a Newspaper of General Circulation. A. McDOWELL, Appellant, v. C. M. DAVID et al., Respondents.

Hill, Morgan & Bledsoe and Kenneth K. Wright for Appellant.

Rohe & Freston and Harold P. Curtis for Respondents.

LANDIS, J., *pro tem.*—This is an application under section 4460 et seq. of the Political Code to have the standing of the "Journal of Commerce" as a newspaper of general circulation, as that term is defined in section 4460, ascertained and established.

The material allegations of the petition are as follows:

"That the applicants, namely, C. M. David, O. J. David and M. F. Brown, at all the times herein mentioned have been and now are a copartnership doing business under the fictitious name of Journal of Commerce, and have complied with all the requirements of Sections 2466 and 2468 of the Civil Code.

"That applicant is the publisher of the newspaper known as Journal of Commerce and said newspaper is a newspaper of general circulation, printed and published at regular intervals, to-wit: daily except Sunday, in the City and County of Los Angeles, California, for the dissemination of local news and intelligence of a general character and has a *bona fide* subscription list of paying subscribers; that said newspaper has been established, printed and published as a daily newspaper, except Sunday, at regular intervals in said City, County and State for a period of more than one year last past, to-wit: from on or about December 11, 1925, to the date hereof."

Thereafter and prior to the time fixed for the hearing, the contestant, A. McDowell, a citizen, resident and taxpayer of the city of Los Angeles, filed a contest to said petition, alleging "that said newspaper was not published for the dissemination of local news or intelligence of a general character, but on the contrary, said newspaper was devoted to the interest and published for the entertainment and instruction of a particular class, profession, trade or calling or for a number of such classes, professions, trades, or callings, to-wit: to the interest and for the entertainment and instruction of persons engaged in or connected with the construction

and building industry of Southern California, and that such was the avowed purpose of such newspaper and of the publishers thereof, and the contestant further alleges that the newspaper did not disseminate local news or intelligence of a general character.'' The court thereafter heard the matter and made its findings in favor of the applicants.

The sole question presented and urged on this appeal is whether or not the evidence was sufficient to support the findings of the court that the newspaper in question was published for the dissemination of local news and intelligence of a general character, and that such newspaper was not devoted to the interest and published for the entertainment and instruction of a particular class, profession, trade or calling, or for a number of such classes, professions, trades or callings, and that said newspaper was not published for the avowed purpose of entertaining and instructing persons engaged in or connected with the building industries of Southern California, within the meaning of section 4460 of the Political Code.

The superior court, having determined from the evidence that the publication is a newspaper of general circulation as that term is defined in section 4460, such determination of the evidence is conclusive on appeal unless it shall appear, as a matter of law, that it is insufficient to support the finding.

In the instant proceeding the evidence adduced on the part of the applicant at the hearing, as shown by the bill of exceptions, consisted of the testimony of C. M. David, a member of the applicant copartnership, and E. J. Davis, circulation manager for applicant, and introduction in evidence of several issues of the paper in question.

Appellant urges as error the fact that, under objections made by contestant, in addition to two issues of the paper that were dated prior to the date of the commencement of this proceeding, four issues dated subsequent to such date were admitted in evidence. Assuming, without holding, that they were not admissible, for the reason that such evidence was cumulative of what was shown by the issues that concededly were properly received in evidence, no substantial injury resulted therefrom.

An examination of the copies of the paper in evidence shows that the publication is made up principally of stereo-

typed matters under the headings of "sub-bids wanted," "sub-contracts let," "today's bid calls," "commercial news flashes," "Los Angeles Permits," "bond bids," "bond elections," "bids wanted in Southwest," "credit information," "mechanics' liens," "notices of completion," "attachments," "notices of actions," "building contracts," "release of attachments," a number of advertisements almost all of which relate to building and construction industries and a number of items claimed to be news items but almost all of which involve or are in some manner connected with the building and construction industries and which appear to be of particular interest to persons connected with such industries. The following headlines of the so-called news items indicate the contents and character and are a fair sample of such items, to-wit: "Approve Plans for Subdivision," "Water System Contract Let," "Quantities for Don Pedro Dam," "Residence Plans are Completed," "Lacy Avenue Bids Received," "Morrow Water Contract Let," "Draws Chinese Church Plans," "Water Board Receives Bids," "Glass Company to Build Plant" and "Garden Court Lease is Taken." In addition thereto, we find the following items: "Markets at a Glance," showing stock market conditions, quotations of Liberty bond values and rates of bank notes.

C. M. David testified "that when they reported disasters they were generally of the type which might interest the construction industry, such as the destruction of buildings and bridges; that they had not carried any report of political matters; that their subscribers were interested in building construction news and that all matters which would have anything to do with building industries would be of interest to their subscribers; that their subscribers woud be interested in weather particulars, credit information, where bids are to be awarded, where bond issues have been voted for public improvements, financial news, bond issues, new business concerns, moves and fire reports; that all of the editorials which were published were connected with business matters, and none had anything to do with social conditions or political situations, and in the majority of cases the editorials related to building construction industries and that they carried no report of social news."

Respondent appears to rely on *In re Green,* 21 Cal. App. 138 [131 Pac. 91], but a comparison of these two publications shows a marked difference in purpose and contents. The paper under consideration in that case, in addition to certain stereotyped matter, contains news accounts of courts and other official proceedings, including the activity of the California members of Congress, review of court decisions, general advertisements, personal notices, and many items of local current events of a diversified character.

In the case of *In re Herman,* 183 Cal. 153 [191 Pac. 934], it was found by the court that the ''Daily Bulletin'' was a newspaper of the following description: a few telegraphic items were contained therein, although these telegraphic items had been copied from other newspapers; the current ''news'' was court calendars, without any description of court proceedings; list of suits filed, marriage licenses and building permits issued, matters of stereotyped nature, tables of temperature and rainfall, altitudes at various points in that section of the state; the names and locations of churches, hospitals, asylums, orphan homes and clubs; the names and addresses of clergymen, location of fire-alarm boxes, directories of public offices and officials and such like matters. In holding that the newspaper involved in that case was not a paper of general circulation, the court said: ''It is clear to us that the purpose of this paper was not the dissemination of local or telegraphic news and intelligence of a general character and that the contents did not come within this description.''

While the rule has been laid down to the effect that even though a newspaper is devoted more or less to a particular class, profession, trade or calling, it will not be deprived of its character as a newspaper of general circulation if, in fact, the newspaper does publish intelligence of passing events and news items of interest to the general public, together with news of interest to such particular class of persons. (*In re Green,* 21 Cal. App. 138 [131 Pac. 91]; *In re Labor Journal,* 190 Cal. 500 [213 Pac. 498].) But the news published in such newspaper must be of such a character that the general reading public might well look to such a paper to learn the news of passing events, and should not be of such a character that the general public would not be at all interested in it. (*Hanscomb* v. *Meyer,*

60 Neb. 72 [83 Am. St. Rep. 509, 48 L. R. A. 411, 82 N. W. 114]; *Crowell* v. *Parker*, 22 R. I. 51 [84 Am. St. Rep. 815, 46 Atl. 35].)

The undoubted purpose of the statutory requirement was to require the publication of legal notices to be published in newspapers which would reach the general reading public, and which would consequently give notice to the public generally and not notice merely to a particular class of the public. (*In re Herman*, 183 Cal. 153 [191 Pac. 934].)

It should be borne in mind that notice by publication is at best a poor substitute for actual or personal notice, and while undoubtedly valid in cases where necessary, still, where it is permissible at all, it must be such as would be reasonably likely to bring the fact of the pendency and the purpose of the proceeding to the attention of those interested. (*Title etc. Restoration Co.* v. *Kerrigan*, 150 Cal. 289 [119 Am. St. Rep. 199, 11 Ann. Cas. 465, 8 L. R. A. (N. S.) 682, 88 Pac. 356].)

In this case no telegraphic news is published; the local news items hereinbefore mentioned are limited to such items as are of particular interest to the building and construction industries. Applicant admits that the only disasters reported consist of the destruction of buildings, bridges, railroads and the like, and that they are reported so as to get knowledge to the construction industry of the needs of the industry. No social or political news is reported, and there is no account of local events, casualties, hotel arrivals or departures, personal items and the like, such as might be expected would be found in a newspaper undertaking to publish intelligence of passing events and news items of interest to the general public.

We are constrained to agree with appellant that the paper in this case is one that falls within the rule laid down in the case of *In re Herman, supra.* Clearly the publication involved in this case is not a newspaper of general circulation but is a newspaper devoted to the interests and published for the entertainment and instruction of a particular class, as those terms are defined in section 4460 of the Political Code. It follows that it must be held that the finding is not supported by the evidence.

Judgment reversed.

Tyler, P. J., and Cashin, J., concurred.