OLGA BURAK, Appellee, v. LYMAN DITSON et al., Appellants.

No. 40222.

FEBRUARY 18, 1930.

*Henderson, Fribourg & Hatfield,* for appellants.

*H. N. Slotsky* and *Shull & Stilwill,* for appellee.

DE GRAFF, J.—The original notice in the instant action was published in time for the May, 1928, term of the district court of Iowa in and for Woodbury County. The notice was in proper form, and the statutory affidavit of publication was filed. The only question presented for determination is whether or not the "Daily Reporter" is a newspaper of general circulation, as the term is used in Section 11084, which in part reads:

"The publication must be of the original notice required for the commencement of actions * * * in some newspaper of general circulation published in the county where the petition is or will be filed, selected by the plaintiff or his attorney."

The facts were stipulated, and by said stipulation it is shown that the Daily Reporter is printed and circulated every day, with the exception of Sundays and holidays, in Sioux City, Iowa; that the paper was established in 1896; that it has a subscription list of approximately 500 subscribers, and its aver-

age daily circulation during the last five years was between 400 and 500; that the following classes and professions are represented in the said subscription list: Attorneys, automobile dealers, repair shops, banks, building and loan associations, material houses, dry cleaning establishments, clothiers, coal dealers, finance companies, furniture dealers, furnace companies, electrical concerns, grocers (both wholesale and retail), hardware concerns, insurance agencies, jewelers, chattel mortgage companies, real estate loan companies, plumbing concerns, oil companies, public utility corporations, collection agencies, mercantile agencies, tire companies, doctors, abstracters, shoe stores, department stores, produce companies, wall paper companies, undertaking establishments, newspapers, florists, storage houses, drug stores, and individuals. It was further stipulated that during the past two years the Daily Reporter had made a specialty of the news of the courts and of legal matters, and that it does publish and has heretofore published a number of legal notices in Woodbury County, Iowa, and that said newspaper is often designated by attorneys and various city, county, and state officers as a paper in which legal notices should be published. It is conceded that the printed matter in said newspaper primarily concerns itself with information regarding court proceedings and courts, but it also contains some advertising matter of miscellaneous character, some literature of a general nature, a limited amount of news and current events, summaries of business conditions, and articles on business problems. The newspaper is a four-page sheet, measuring $10\frac{1}{2}''$ x $14''$, with four columns on each page. It is entered as second-class matter in the post office at Sioux City, and has fixed subscription rates.

Section 11084, Code, 1927, at the time of its enactment, and before amendment by the general assembly, apparently in response to dicta found in *Brice v. Graves*, 142 Iowa 722, did not contain the words "general circulation." This historical fact, however, is not controlling in the case at bar. The instant case being one of novel impression in this court, it is proper that we resort to the decisions of the courts of our sister states which have construed statutory language identical, or of similar import, with the section of our Code now under consideration. The Supreme Court of California, in a case entitled *In re "Labor*

*Journal,"* 190 Cal. 500 (213 Pac. 498), had under consideration a weekly newspaper published at San Bernardino, known as the "Labor Journal." The contention was that said newspaper was not a newspaper of general circulation, as defined by Section 4460 of the Political Code of California, but was a paper devoted to the interest, entertainment, and instruction of a particular class and profession. It is said in the opinion:

"But the fact that a newspaper is devoted to the interest of a particular class of persons, as, for instance, those engaged in the same business or calling, and specializes on news and intelligence primarily of interest to that class, will not exclude it from classification as a newspaper of general circulation, if, in addition to such special news, it also publishes news of general character * * *."

Whether a newspaper is one of general circulation is a matter of substance, and not of size.

*In re Application of Green,* 21 Cal. App. 138 (131 Pac. 91), reaffirms the proposition. See *Baldwin v. Brown,* 193 Cal. 345 (224 Pac. 462); 46 Corpus Juris 22.

In *Lynn v. Allen,* 145 Ind. 584 (44 N. E. 646), the Supreme Court of Indiana had under consideration a newspaper called the "Daily Reporter," which had a subscription list of about 550 in the city of Indianapolis, which newspaper was quite similar in character and purpose to the paper in the instant case. The Revised Statutes of Indiana provide for service of process by publication in a "newspaper of general circulation." It is said in the Indiana opinion:

"By a 'newspaper of general circulation,' the legislature certainly did not intend a newspaper read by all the people of the county. As a matter of fact, every newspaper is, in greater or less degree, devoted to some special interest. No one, however, would claim that, because a newspaper should, for example, be the organ of a certain political party, and especially devoted to the interests of such party, it would not, therefore, be a newspaper of general circulation. Yet such a newspaper is, to a large extent, read only by members of the political party whose doctrines are advocated and expounded in its columns. * * * Indeed, it would seem that this newspaper is quite as likely as any party or other paper of general circulation to reach the

particular persons interested in the proceeding before the court; and, consequently, that the spirit of the statute is quite as well served as could be, if the notice were published elsewhere. Its special purpose is to give news of the courts, and to circulate this news generally amongst all those who, whether of the legal profession or not, may be interested in such proceedings."

In the case of *Hanscom v. Meyer*, 60 Neb. 68 (82 N. W. 114) the same proposition was presented: that is, whether the publication of a notice of foreclosure of a real estate mortgage in a newspaper known as the "Omaha Mercury" was a publication in a newspaper of "general circulation," within the purview of the Nebraska Code of Civil Procedure, which required notice of the time and place of sale of lands on execution in some newspaper of general circulation printed in the county. The Omaha Mercury was a weekly newspaper, which found circulation among various classes of people within the county, but was devoted principally to legal notices and information regarding courts and court proceedings, although said newspaper also contained advertising of a miscellaneous character, literature of a general kind, and a limited amount of general news and current events. It was held that the said newspaper conformed to statutory requirements. This decision was reaffirmed by the Nebraska Supreme Court in *Merrill v. Conroy,* 77 Neb. 228 (109 N. W. 175). That case concerned itself with a publication known as the "Omaha Daily Record," wherein a notice of sale was published. See, also, *Kellogg v. Carrico,* 47 Mo. 157. A study of the decisions bearing on the question before us suggests the following criteria: First, that a newspaper of general circulation is not determined by the number of its subscribers, but by the diversity of its subscribers. Second, that, even though a newspaper is of particular interest to a particular class of persons, yet, if it contains news of a general character and interest to the community, although the news may be limited in amount, it qualifies as a newspaper of "general circulation." See *Olsen v. Bibb Co.*, 117 Minn. 214 (135 N. W. 385) (with cases cited); *Legal Ledger v. Hodgson,* 176 Minn. 635 (222 N. W. 646); *Culclasure v. Consolidated Bond & Mtg. Co.*, 94 Fla. 764 (114 So. 540); *Hesler v. Coldron,* 29 Okla. 216 (116 Pac. 787); *Lynch v. Durfee,* 101 Mich, 171 (59 N. W. 409); *Puget Sound Pub. Co. v. Times Ptg. Co.*, 33 Wash.

551 (74 Pac. 802, l.c. 804). For a general discussion and decisions, see Hale's Law of the Press (1923), Chapter X, page 451 *et seq.*

We therefore hold that the "Daily Reporter," in the case at bar, is legally qualified as a medium of official and legal publications, under Section 11084, Code, 1927. It necessarily follows that the trial court did not err in overruling the appellant's special appearance and motion to quash.—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.